U.S. District Court
454 Golden Gate Avenue
S.F., CA 94102-3483

**FILED**
FEB - 4 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ___RM___ DEPUTY

Diaz, Gates, et al., Plaintiffs,

vs.

Carroll, Naiman, et al., Defendants.

08CV0235 BTM (POR)

Northern District of California    Case No: C08-0042 JSW (PR)

## Motion To Correct Misspelled Name And Process IFP Forms

(A) To the Honorable Judge; Review Courts; Media; Lawsuit Attorneys; etc.

(B) In 2007 Oct. 10, Monozygothic (MZ) twin Q5 (Q.D. Nguyen) was falsely booked at San Diego County Jail (SDCJ) under the misspelled name of N. Garrucho due to misconduct by NM officials who partially caused the preventable 2007 Oct. wildfires. The correct name of Q4 (the MZ twin of Q5) is Noel Garrucha-Gallego as noted in the CA-DMV records. Q5 is falsely charged felonies since the $360 Red Cross donation disputed is below the $400 felony amount, (CPC §487.1) Q5 had proved with Q3 that they were at Katrina's floods while Q4 was at CDCR facilities using GPS data; media records; witnesses; medical data; etc. So NM Judge Cano-Garcia signed their release order. CA-CPT. Olivas' kidnapping of Q5 delayed Q5 from compiling his research data that would have prevented the 2007 wildfires. So the Honorable Judge is requested to order SDCJ to correct the misspelled name (7775738) to Garrucha-Gallego and process IFP Trust Account Withdrawal Authorization.

(C) This motion's supports are: Authorities; Chronologies; Memorandum of Points and Authorities.

*Q.D. Nguyen*  2008 Jan. 29
Mr. Q.D. Nguyen
RE: N. Garrucha-Gallego
446 Alta 7775738 Legal
S.D., CA 92158-0129      (B01)

**AUTHORITIES:** STATUTES AND CASE LAWS

| | | |
|---|---|---|
| 5  | USC § 601 (2004 IRTPA) | = INTEL. REFORM AND TERRORISM PROTECTION ACT |
| 18 | USC § 1(a)(1980 CIPA) | = CLASSIFIED INFORMATION PROTECTION ACT |
| 28 | USC § 636(c)(1) | = DISTRICT COURTS MAGISTRATE JUDGE OPTION |
| 28 | USC § 1343(a) | = DISTRICT COURTS JURISDICTION STATUTES |
| 28 | USC § 1391(b) | = DISTRICT VENUE DETERMINATION STATUTES |
| 28 | USC § 1915(a) | = MOTION TO PROCEED VIA IFP STATUTE |
| 28 | USC § 1915(a)2 | = "INSTITUTIONAL EQUIVALENT" STATUTE |
| 42 | USC § 1983 | = CIVIL RIGHTS FEDERAL COMPLAINT STATUTE |
| 50 | USC § 403; 1803(a) (1978 FISA) | = FOREIGN INTELLIGENCE SURVEILLANCE ACT |
| 50 | USC § 921(a) | = CLASSIFIED AGENTS NDA STATUTES |

| | | | |
|---|---|---|---|
| CCP § 2018 | (NDA) | = CODE OF CIVIL PROCEDURES SECTION 2018 CONFIDENTIALITY |
| CEC § 952 | (NDA) | = CA EVIDENCE CODE SECTION 952 CONFIDENTIALITY |
| CPC § 273A1 | (ENDANGERMENT) | = CA PENAL CODE SECTION 273 A1 MISDEAMENOR WOBBLER |
| CPC § 368(D) | (THEFT) | = CA PENAL CODE SECTION 368(D) THEFT |
| CPC § 470A | (FORGERY) | = CA PENAL CODE SECTION 470(A) FORGERY |
| CPC § 487.1 | (GRAND THEFT) | = CA PENAL CODE SECTION 487.1 THEFT > $400 |
| CPC § 1054.6 | (NDA) | = CA PENAL CODE SECTION 1054.6 CONFIDENTIALITY |
| CVC § 10851(A) | (JOYRIDING) | = CA VEHICLE CODE SECTION 10851(A) GRAND THEFT AUTO |

CARTER V. SUPERIOR COURT (APP. 2 DIST. 2006) 46 CAL. RPTR. 3d 507; 141 CAL. APP. 4TH 992 (5 FACTORS)

IN RE NEUMAN (APP. 4 DIST. 1976) 134 CAL. RPTR. 886; 65 CAL. APP. 3d 57 (REASONABLE GROUNDS)

PEOPLE V. O'DELL (APP. 3 DIST. 2005) 23 CAL. RPTR. 3d 902; 126 CAL. APP. 4TH 962 (14TH AMEND.)

(B01)

# CHRONOLOGY: CASE HISTORIES

| Year Mon. Day | Who | What | When | Where | Why | How |
|---|---|---|---|---|---|---|
| 1984 May | Q3, Q4, Q5 | DoD-ROTC | Fall Semester | SDSU-AROTC | USAR Commission | POTUS R. Reagan |
| 1984 July | Q3, Q4, Q5 | NCB·TS·SCI | NOA-PoA | Global | Classified | Project Justice 2000 (J2K) |
| 1988 Apr. 01 | Q4 | Arrest (J2K) | PM | Chula Vista | Spring Valley Case | Conspiracy by SDCS |
| 1988 May 10 | Q4 | Dismissals | | NCIC Database | 2 Counts | CDA - Louis KATZ |
| | | | | | | |
| 2002 Feb. 25 | Q4 | Arrest (J2K) | AM | 24-HR Fitness SDCA 92108 | SCD 165856 | Joyriding/Grand Theft |
| 2003 May 23 | Q4 | Plea Bargain | | SDCA 92101 | | |
| 2003 May 23 | Q4 | Sentencing | | SDCA 92101 | | |
| 2003 May 29 | Q4 | CDCR Intake | | SDCA 92179 | | |
| 2003 | Q4 | CDCR Parole | | | | |
| | | | | | | |
| 2004 June 08 | Q4 | Arrest | | SDSU (B. King) SDCA 92182 | SCD 182951 | Forgery ($645 Check) |
| 2005 Feb. 02 | Q4 | Sentencing | | SDCA 92101 | | |
| 2005 Feb. 14 | Q4 | CDCR Intake | | SDCA 92179 | | |
| 2005 Aug. | Q3 & Q5 | Katrina Floods | | NoLA 70129 | | |
| 2005 Sep. 03 | Q4 | CDCR Parole | | FrCA 93724 | | |
| 2005 Sep. 15 | Q4 | A3 Attacks | | Coronado Bridge SDCA 92101 | | |
| 2005 Nov. 09 | Q3 | Arrest (PAL-W) | | LCNM 88001 | M14ER2005-149 | Extradition |
| 2005 Dec. | Q3 | A3 Moles Attacks | | LCNM 88005 | T94013 Report | Perjury by L. YOST |
| 2006 Jan | Q3 & Q5 | Release Order | | LCNM 88005 | D30TER 2006-002 | NM Judge S.E. CANO-GARCIA |
| | | | | | | |
| 2007 Oct. 10 We. | Q5 | Arraignment | Dept. 11 PLG | SDCA 92101 | Request Discovery | Not Guilty |
| 2007 Oct. 15 Mo. | Q5 | (B. Review Due) | N/A | SDCA 92101 | Not Scheduled | Violation of Due Process |
| 2007 Oct. 19 Fr. | Q5 | Fel. Disp. Con. | Dept. 35 N/A | SDCA 92101 | No Appearance | Violation of Due Process |
| 2007 Oct. 22 Mo | Q5 | (Preliminary Due) | N/A | SDCA 92101 | Not Scheduled | Violation of Due Process |
| 2007 Oct. 30 Tu. | Q5 | Preliminary-Late | Dept. 35 MGW | SDCA 92101 | Atty. D. Thompson | Dismissed 10 of 16 Charges |

(B01)

MEMORANDUM OF POINTS AND AUTHORITIES (MPA) <u>SUBSTITUTION OF COUNSEL</u>

"WHILE THE TRIAL COURT MAY NOT PROCEED WITH A CASE AGAINST A DEFENDANT BEFORE IT DETERMINES HIS COMPETENCE, IT MAY AND INDEED MUST PROMPTLY CONSIDER A MOTION FOR SUBSTITUTION OF COUNSEL WHILE COMPETENCY HEARING IS PENDING, WHEN THE RIGHT TO EFFECTIVE ASSISTANCE WOULD BE SUBSTANTIALLY IMPAIRED IF HIS REQUEST WERE IGNORED." (<u>CAL APP. 5 DIST 2005; PEOPLE V. SOLORZANO, 24 CAL. RPTR. 3D 735, 126 CAL APP. 4TH 1063</u>)

IN ALL CASES ENTITLED "STATE OF CALIFORNIA VS. GARRUCHA" COURT RECORDS SHOW WITHOUT DISPUTE THAT DEFENDANTS HAVE BEEN HIGH IQ SYSTEMS ANALYSTS AND COMMISSIONED DoD OFFICERS VIA ROTC AT SDSU IN 1984 (PMOS: TRANSPORT SYSTEM; SMOS: ADJUTANT-NCB). SINCE A HEAD INJURY IN 1997, WHEN Q4 WAS A CONTRACTED SOFTWARE DEVELOPER AT $50 PER HOUR, AT LEAST 7 YEARS OF MEMORY RECOVERY HAD OCCURRED BY THE TIME OF THE 2002 FEB 25 ARREST THAT RESULTED IN JUSTICE 2000 (J2K) CASE #SCD 165856. SEVERAL MONTHS OF COMPETENCY EVALUATION FOR PSH RESULTED IN A COMPETENCY REPORT. A SIMILAR PROCESS OCCURRED IN <u>J2K CASE # SCD 182951</u>. UNFORTUNATELY THE DELAYS RESULTED IN Q4 NOT BEING ABLE TO COMPILE THE N3-TARS DATA TO PREVENT THE 2003 CA WILDFIRES AND THE 2005 KATRINA FLOODS. SINCE Q4 HAD DEFENSE COUNSEL IN BOTH CASES WITH <u>NO</u> PROPER SECURITY CLEARANCE THERE WAS A <u>CONFLICT OF INTEREST</u> (COI). SO WHAT WERE LEGAL ACTS AUTHORIZED VIA RESEARCH NDA AND PoA CONTRACTS RESULTED IN LEGAL MALPRACTICE PLEAS DUE TO <u>INEFFECTIVE ASSISTANCE OF COUNSEL</u> (IAC)

AS OF 2005 THE J2K PROJECTS DECLASSIFIED TO CONFIDENTIAL SECRET (CS-NTK) SO NM JUDGE S.E. CANO-GARCIA REVIEWED CS-NTK DATA THAT RESULTED IN HER ORDER TO RELEASE DEFENDANT Q3 WHO WAS AT KATRINA FLOODS WITH Q5. (<u>NM: M14ER 2005-149/D307ER 2006-002; M14FR 2006-044/D307CR 2006-341, 641</u>)

L17

Memorandum of Points and Authorities (MPA) <u>False Convictions</u>

<u>Authorities:</u>

"In all of our traditional efforts to protect the individual against oppression and false conviction by the state, we have relied basically and primarily on confrontation and cross-examination... Without recourse to these means, it is impossible for anyone accused of anything to protect himself fully against enemies whose evidence may consist of nothing more than <u>MALICE</u>, <u>VINDICTIVENESS</u>, <u>MISTAKEN IDENTITY</u>, INTOLERANCE, PREJUDICE, OR A PERVERTED <u>DESIRE TO DESTROY</u>..." (Peters v. Hobby, 349 U.S. 331, 350; 75 S. Ct. 790, 799, 800; 99 L. Ed. 1129)

<u>Incident:</u>

In 2007, MIC Defense contractors: Q3 and twin of Quintuplets Q5 had been testing 24-hrs TARS at border states. They had the data of A3 <u>Terrorists-Wildfires-Arsonists-Perps (TWAP)</u> so NM Judge S.E. Cano-Garcia ordered their release. The LCPD was told by their DA that Q3 could not be arrested and extradited for Q4 who had a <u>Parole At Large (PAL)</u> warrant at CA, due to rulings in 6 of 6 NM cases. But due to <u>MALICE</u> for being sued, LCPD L221 Detective J.J. Ferguson searched and found Q5 who was conducting MIC orientation meetings for <u>microsoft.com/mindshare</u> at the Las Cruces library. When Q5 informed Ferguson he was not the Q4 brother wanted at CA and showed him his true-ID to ask for where Ferguson put the missing MIC keys to classified offices, Q5 was arrested anyway. When NM Judge Martin ordered another Identity Hearing for Q5, Ferguson's contempt of court used a Governor's Warrant already dismissed by Judge Cano-Garcia to get CA-CPT. Oliva to kidnap Q5 to CA.

<u>Cause Of Actions:</u>

At the 2007 Oct. 10 Arraignment Attorney Durovic was told to ask for a Bail Review/OR Release Order Hearing so that Q5 can compile classified data to prevent 2007 wildfires. Q5 asked that No Rights are Waived. But Durovic's lack of Classified Clearance resulted in wildfires that could have been prevented.

L17

On 6/6/07, Inmate Noel Garrucha, T94013, was scheduled to be extradited from Dona Ana County Jail in Las Cruces, New Mexico. At approximately 0115, Garrucha willfully resisted staff by refusing to be placed in mechanical restraints. Specifically, Agent H. Hall ordered Garrucha to stand up and place his hands behind his back. As Agent Hall took control of Garrucha's left wrist to place him in handcuffs, he started to resist by flailing his hands above his head. Agent Johnson took control of Garrucha's right hand while Hall maintained control of his left hand. Captain Oliva simultaneously took control Garrucha's upper body from the rear. At this point Johnson and Hall raised Garrucha's hands above his head to allow Lieutenant Armstrong to place the waist chain around Garrucha's waist. After the waist chain was applied, Armstrong, secured the handcuffs to the waist chain and with the assistance of Hall and Johnson, placed Garrucha in the handcuffs.

Hall gave several orders to Garrucha to kneel down, to allow the application of leg irons. Garrucha refused all of Halls orders and continued to be resistive. Armstrong, who had a hold of Garrucha's right arm and the upper back area of his shirt, forced Garrucha to his knees. Oliva, Hall and Johnson applied the leg irons. Garrucha was helped to his feet and complied during the escort out of the jail and to the sally port.

Garrucha complied with Hall's order to sit in the front seat of the rental vehicle. However, as Hall attempted to place the seat belt around Garrucha, he attempted to exit the vehicle. Oliva, who was positioned directly behind the passenger's seat, took control of Garrucha, by the shoulders, and pulled him back into the seat. Garrucha continued to resist Hall and Oliva's attempts to place the seat belt around him. Oliva ordered Hall and Johnson to remove Garrucha from the vehicle and be placed in the Body Guard Restraint System. Oliva, Hall and Johnson removed Garrucha from the vehicle and placed him on his stomach to apply the Body Guard Restraint System. Armstrong controlled Garrucha's upper body by applying pressure to his upper back area. As Oliva, Hall and Johnson secured him in the Body Guard, Garrucha was resisting by rolling his body and head from side to side while positioned face down on a cement floor. His resistive actions caused several small abrasions to his forehead, arms and knees. Garrucha was secured and placed in the back of the rental van and transported to R. J Donovan without further incident.

Reporting Employee:   Lt. S. Armstrong
                      Extradition Lt, S/S/H

[EXHIBIT 2007 F06]